**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-1754-WJM-NYW

JORGE A. LOPEZ,

      Plaintiff,

v.

JEFF SHRADER, in his individual and official capacity,
BOLL, in his individual and official capacity,
HENSLEY, in his individual and official capacity,
HALL, in his individual and official capacity,

      Defendants.

---

**ORDER ADOPTING RECOMMENDATIONS OF MAGISTRATE JUDGE GRANTING IN
PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

---

      Plaintiff Jorge A. Lopez ("Lopez") brings this action against Defendants Jefferson

County Sheriff Jeff Shrader, Deputy Sheriff Boll, Deputy Sheriff Hensley, and Deputy

Sheriff Hall (jointly, "Defendants"), following a May 14, 2019 incident in which a fellow

inmate attacked Lopez at the Colorado Department of Corrections' Jefferson County

Jail ("Jefferson County Jail").  (ECF No. 17.)

      This matter is before the Court on United States Magistrate Judge Nina Y.

Wang's Report and Recommendation, dated July 15, 2020 ("Recommendation") (ECF

No. 54), which recommends that the Court grant in part and deny in part Defendants'

Motion to Dismiss Third Amended Prisoner Complaint ("Motion to Dismiss") (ECF

No. 45).  The Recommendation is incorporated herein by reference.  *See* 28 U.S.C.

§ 636(b)(1)(B); Fed. R. Civ. P. 72(b).  Defendants filed an objection to the

Recommendation ("Objection") on July 29, 2020.  (ECF No. 55.)

## I.  RULE 72(b) STANDARD

When a magistrate judge issues a recommendation on a dispositive matter,

Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine de

novo any part of the magistrate judge's [recommendation] that has been properly

objected to."  An objection to a recommendation is properly made if it is both timely and

specific.  *United States v. 2121 East 30th St.*, 73 F.3d 1057, 1059–60 (10th Cir. 1996).

An objection is sufficiently specific if it "enables the district judge to focus attention on

those issues—factual and legal—that are at the heart of the parties' dispute."  *Id*. at

1059.  In conducting its review, "[t]he district judge may accept, reject, or modify the

[recommendation]; receive further evidence; or return the matter to the magistrate judge

with instructions."  Fed. R. Civ. P. 72(b)(3).

In the absence of a timely and specific objection, "the district court may review a

magistrate [judge's] report under any standard it deems appropriate."  *Summers v.

State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S.

140, 150 (1985)); *see also* Fed. R. Civ. P. 72 Advisory Committee's Note ("When no

timely objection is filed, the court need only satisfy itself that there is no clear error on

the face of the record.").

## II.  BACKGROUND

The following factual summary is drawn from Lopez's Third Amended Complaint,

except where otherwise stated.  The Court assumes the allegations contained in the

Complaint to be true for the purpose of deciding the Motion to Dismiss.  *See Ridge at*

*Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

The events underlying this action occurred while Lopez was housed as a pretrial detainee at the Jefferson County Jail.  (ECF No. 17 at 6.)  On May 14, 2019, Lopez was physically assaulted by another inmate while standing in line to receive food.  (*Id.*)  Another inmate struck Lopez's face with the food tray and his fists, causing Lopez severe head trauma resulting in, among other alleged injuries, permanent loss of vision in his right eye.  (*Id.* at 6, 11.)

Immediately following the assault, Lopez informed Defendant Boll, who was the sole supervising officer of the "BHU pod" at the time, of the assault and his injuries.  (*Id.* at 11.)  Lopez showed Defendant Boll his injuries to his head and face and informed him that he required immediate medical attention from the Jefferson County Jail medical provider.  (*Id.* at 11, 14.)  According to Lopez, Defendant Boll knew, or should have immediately recognized, that Lopez required serious medical care.  (*Id.*)  He further alleges that Jefferson County Jail policy and procedural regulations required Defendant Boll to immediately contact medical personnel and escort Lopez to the medical department for examination and treatment.  (*Id.* at 11.)   Nonetheless, Defendant Boll "deliberately refused to call medical or inform medical care providers of [Lopez's] injuries or in any way notify his supervisors or jail medical personnel that [Lopez] had requested and needed urgent medical care for his serious medical need."  (*Id.*)  Instead, he placed Lopez outside the BHU pod and reviewed the video surveillance footage of the incident.  (*Id.*)  He then caused Lopez to be removed from the BHU pod and be placed in the medium custody section of the jail for ten days

3

without reporting the incident or arranging transport so Lopez could receive medical care.  (*Id.* at 15.)

Defendant Hensley was assigned to transport Lopez to the medium security unit of the Jefferson County Jail after Lopez's assault.  (*Id.* at 18.)  Lopez alleges he verbally informed Defendant Hensley of the assault, showed him his injuries, and requested that Defendant Hensley take him to the medical department.  (*Id.*)  Defendant Hensley refused to escort Lopez to receive medical care and did not notify him of any alternate means by which he could receive treatment.  (*Id.*)  He instead locked Lopez in his cell. (*Id.*)

Inmates in the medium security unit of Jefferson County Jail can make medical requests using a computer kiosk in the day room of their pod.  (*Id.*)  However, because inmates were locked in their cells for 23 hours per day at the time and were only allowed out of their cells for showers and meals, Lopez claims that he could not access the kiosk for eight days.  (*Id.*)

Defendant Hall was the acting floor sergeant assigned to Lopez's BHU unit on the day of the assault and was responsible for supervising the various floor officers in each pod, including Defendants Boll and Hensley, and for ensuring inmate safety.  (*Id.* at 20–21.)  Lopez claims Defendant Hall should have known of the "dangerous conditions at the jail and over-capacity issues which affect the floor officer's ability to supervise as well as negatively affect inmate and officer safety."  (*Id.* at 21.)  He claims, however, that Defendant Hall "became complacent to the dangerous conditions in the Jefferson County Jail and ignored or tolerated inmate rule violations by failing to

investigate allegations of inmate-on-inmate violence and failing to take steps necessary to prevent such violence."  (*Id.*)

Lopez alleges that immediately following his assault, Defendant Hall was verbally informed of the incident and reviewed the incident on the pod cameras.  (*Id.* at 25.) Nonetheless, like Defendant Boll, Defendant Hall failed to notify Jefferson County Jail medical personnel or ensure that Lopez received medical care.  (*Id.*)  He instead acted with "intentional[] and deliberate[] indeferen[ce]" to Lopez's serious medical needs and decided to send Lopez to the medium custody unit where Defendant Hall knew that Lopez would be locked in a cell and would be unable to receive medical attention.  (*Id.*)

Lopez alleges that Defendant Shrader, who is the sheriff and supervisor of the Jefferson County Jail, failed to properly maintain staffing levels, policies, and procedures at the Jefferson County Jail to prevent inmate on inmate violence and maintain minimal safety while Lopez was incarcerated.  (*Id.* at 5.)

Lopez initiated this *pro se* action on June 17, 2019 (ECF No. 1) and filed his Third Amended Complaint on September 23, 2019 (ECF No. 17).  Lopez alleges six claims against Defendants in their official and individual capacities:

(1)   "Negligence / Negligence Per Se / Failure to Supervise (Respondeat Superior)" against Defendant Shrader ("Claim One") (*id.* at 5–9);

(2)   "Negligence / Negligence Per Se / Failure to Supervise" against Defendant Boll ("Claim Two") (*id.* at 10–12);

(3)   "Deliberate Indifference to Mr. Lopez'[s] Serious Medical Needs" against Defendant Boll ("Claim Three") (*id.* at 13–16);

(4)  "Deliberate Indifference to Mr. Lopez'[s] Serious Medical Needs" against Defendant Hensley ("Claim Four") (*id.* at 17–19);

(5)  "Negligence / Negligence Per Se" against Defendant Hall ("Claim Five") (*id.* at 20–23); and

(6)  "Deliberate Indifference to Mr. Lopez'[s] Serious Medical Needs" against Defendant Hall ("Claim Six") (*id.* at 24–26).

### III. MOTION TO DISMISS STANDARD

**A.    Federal Rule of Civil Procedure 12(b)(1)**

As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear.  *See* U.S. Const. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994).  Statutes conferring jurisdiction on federal courts must be construed strictly.  *See F&S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  A party challenging the Court's jurisdiction may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.

6

*See id.* A court has wide discretion to allow affidavits, other documents, and may conduct a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). *See id.*

### B.   Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." A "court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177. Thus, in ruling on a motion to dismiss under Rule 12(b)(6), the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint.").

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect

the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir.

2009) (internal quotation marks omitted).  "Thus, 'a well-pleaded complaint may

proceed even if it strikes a savvy judge that actual proof of those facts is improbable,

and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at

556).  However, "[t]he burden is on the plaintiff to frame a 'complaint with enough

factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v.

Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

"[C]omplaints that are no more than 'labels and conclusions' or 'a formulaic recitation of

the elements' of a cause of action,' . . . 'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at

555).

## IV.  ANALYSIS

### A.   Colorado Government Immunity Act

The Colorado Government Immunity Act ("CGIA"), codified at Colorado Revised

Statute § 24-10-101 *et seq.*, bars actions in tort against public employees that

> arise[ ] out of an act or omission of such employee occurring
> during the performance of his duties and within the scope of
> his employment unless the act or omission causing injury
> was willful and wanton; except that no immunity may be
> asserted in an action for injuries resulting from the
> circumstances specified in Section 24-10-106(1).

Colo. Rev. Stat. § 24-10-118(2)(a).  Section 24-10-106(1)(b), in turn, waives sovereign

immunity in an action for injuries resulting from "the operation of any . . . correctional

facility . . . or jail by such public entity."

A plaintiff must file "a written notice . . . within one hundred eighty-two days after

the date of the discovery of the injury, regardless of whether the person then knew all of

the elements of a claim or of a cause of action for such injury."  Colo. Rev. Stat. § 24-10-109(1).  This requirement is a "jurisdictional prerequisite" to bringing an action under the CGIA, and "failure of compliance shall forever bar any such action."  Colo. Rev. Stat. § 24-10-109(1).

Judge Wang recommended that the Defendants' Motion to Dismiss be granted as to state law claims brought under Claims One, Two, and Five because Lopez failed to provide any factual allegations concerning the CGIA or his compliance with the required notice provision.  (ECF No. 54 at 9–10.)  However, although the titles of Lopez's First, Second, and Fifth Claims are claims for negligence, negligence per se, and failure to supervise, the substance of those claims alleges violations of Lopez's rights under "U.S. Const. Amend. VIII and Colo. Const. Art. 2, § 20 and . . . Procedural Substantive right to Due Process pursuant to U.S. Const. Amend. XIV and Colo. Const. Art. 2, § 25."  (ECF No. 17 at 5, 10, 20.)  Judge Wang therefore concluded that to the extent Lopez's First, Second, and Fifth Claims state causes of action other than state law torts, they are outside of the scope of the CGIA.[1]  (*Id.* at 10.)

No objections have been filed as to this portion of the Recommendation.  Accordingly, the Court reviews this portion of the Recommendation for "clear error," because that is what the Federal Rules Advisory Committee recommends.  *See* Fed. R. Civ. P. 72 advisory committee note to 1983 amendments ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the

---

[1] As Judge Wang recognized, Lopez appears to invoke the Colorado Constitution despite the fact that Colorado does not have a corollary to 42 U.S.C. § 1983 to address violations of the Colorado Constitution.  (ECF No. 54 at 10 n.1.)  Thus, although it is unclear whether Lopez states a viable claim under the Colorado Constitution, the Court will not substantively address this issue because Defendants did not raise this argument.

record in order to accept the recommendation.").

Because the Court finds that Judge Wang's analysis of Claims One, Two, and Five is well-reasoned and without clear error, it will adopt this portion of the Recommendation in full.  Accordingly, Defendants' Motion to Dismiss is granted as to any state law claims.

**B.    Exhaustion of Administrative Remedies**

Defendants argue that Lopez failed to exhaust his administrative remedies at Jefferson County Jail prior to filing this lawsuit, which bars the suit in its entirety under the Prison Litigation Reform Act ("PLRA") and Colo. Rev. Stat. § 13-17.5-102.3(1). (ECF No. 45 at 5–7.)  In support of this argument, Defendants filed a copy of all of the written requests (*i.e.*, "kites") and grievances that Lopez sent using the Inmate Request System during his incarceration at Jefferson County Jail.  (*Id.* at 6; ECF No. 45-1.) They contend that because Lopez did not file a grievance as required under Jefferson County Jail's grievance process, he has failed to exhaust his administrative remedies. (ECF No. 45 at 6.)  They further argue that certain kites demonstrate that Lopez was able to submit kites during the period in which he claimed he lacked access to the kiosk to do so.  (ECF No. 45 at 6; ECF No. 45-1 at 6–8.)

In her Recommendation, Judge Wang recognized that questions of exhaustion under the PLRA are considered on motions to dismiss under Rule 12(b)(6).  (ECF No. 54 at 13.)  Because a court's function on a Rule 12(b)(6) motion is to assess whether a complaint alone is legally sufficient to state a claim for which relief can be granted, Judge Wang determined that the kites should not be considered at this stage.  She reasoned that the kites and grievances that Defendants attached to their Motion to

Dismiss were neither referred to in the Lopez's Third Amended Complaint nor central to his claims.  (*Id.* at 14.)  She therefore did not recommend dismissal of Lopez's claims for failure to exhaust under the PLRA.  (*Id.* at 14, 17.)  Moreover, Judge Wang did not recommend converting the Motion to Dismiss to a motion for summary judgment for three reasons: (1) Defendants have not sought such a conversion; (2) Lopez has not had the opportunity to seek any discovery in this matter which would allow him to factually rebut Defendants' exhaustion arguments; and (3) the parties were not provided an opportunity to supplement the record before the Court.  (*Id.* at 16–17.)

      1.    <u>Consideration of Lopez's Kites and Grievances</u>

Although a court must ordinarily accept well-pleaded factual allegations in a complaint as true for purposes of resolving a motion under Rule 12(b)(6), there are exceptions to this rule.  *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013).  "Courts are permitted to review documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Id.* (internal quotations omitted).

Defendants argue that Judge Wang erred in finding that it could not consider the administrative records determine whether Lopez has administratively exhausted his claims.  (ECF No. 55 at 4.)  In particular, they argue that Lopez's kites and grievances—which purportedly demonstrate that Lopez was able to communicate and receive medical attention for his injuries and failed to exhaust his administrative remedies—were incorporated by reference into the Complaint, are central to Lopez's claims, and have not been challenged based on authenticity.  (*Id.* at 7.)  The Court

disagrees.

The kites and grievances may well relate to whether Lopez administratively exhausted his claims.  They are not, however, referenced in Lopez's Third Amended Complaint.  This alone excludes the administrative records from consideration on a Rule 12(b)(6) motion.[2]  Moreover, the Court finds that the documentation is not central to the question about whether Defendants acted with deliberate indifference by not *immediately* ensuring that Lopez received medical care.  As such, the Court will not consider Lopez's kites and grievances at this stage of the litigation.

For the reasons explained above, Defendants' objection that Judge Wang erred in finding that she could not consider the kites and grievances to resolve the administrative exhaustion issue is overruled.

2.    Conversion to Summary Judgment

A court may convert a motion to dismiss into a motion for summary judgment when a party submits material beyond the pleadings, so long as all parties are given a reasonable opportunity to present all the material that is pertinent to the motion.  Fed. R. Civ. P. 12(d); *Price v. Philpot*, 420 F.3d 1158, 1167 (10th Cir. 2005) (the district court "must provide the parties with notice so that all factual allegations may be met with

---

[2]  Defendants cite *Davis v. BAE Sys. Tech. Sols. & Servs., Inc.*, 764 F. App'x 741, 742 n.1 (10th Cir. 2019) for the proposition that a court may consider documents outside of a complaint even if they are not explicitly incorporated by reference into the complaint.  (ECF No. 55 at 4–5, 7.)  However, the documents considered in *Davis*—the discrimination charge that Davis filed with the Equal Employment Opportunity Commission ("EEOC") and the Colorado Rights Division as well as BAE's statement in response to that charge—were in fact mentioned by Davis's complaint.  *See* First Amended Complaint at ¶ 16, *Davis v. BAE Sys. Tech. Sols. & Servs., Inc.*, Civil Action No. 17-cv-0322 (D. Colo.) (ECF No. 26) (alleging that "[a]fter Mr. Davis filed a charge of discrimination with the [EEOC], BAE changed its justification for not re-hiring him and claimed that it was not because of a personality conflict, but because he allegedly lacked experience working with servers.").

countervailing evidence").  "Ultimately, the decision whether to convert a motion to dismiss is reserved to the court's discretion."  *Humood v. City of Aurora, Colo.*, 2014 WL 4345410, at *5 (D. Colo. Aug. 28, 2014).

Defendants have not objected to the recommendation that the Court should not convert the Rule 12(b)(6) motion into a motion for summary judgment. The Court finds that this analysis is well-reasoned and not clearly erroneous.  Because Lopez has not been provided either notice of potential conversion or the opportunity to supplement the record with countervailing evidence regarding his exhaustion of administrative remedies, it would be inappropriate to convert Defendants' Motion into a motion for summary judgment.  Accordingly, the Court adopts this portion of the Recommendation.

### C.   Failure to State a Claim

Defendants argue that Lopez has failed to state any constitutional claims against Defendant Shrader or any official capacity claims against Defendants.  (ECF No. 45 at 7–10.)   Judge Wang recommended that the Court dismiss the individual capacity claim against Defendant Shrader and the official capacity clams against Defendants Boll, Hensley, and Hall.  (ECF No. 54 at 18–19.)  She did not, however, recommend dismissal of the official capacity claim against Defendant Shrader, to which Defendants have objected.  (ECF No. 54 at 19–20; ECF No. 55 at 8–9.)

### 1.   Individual Capacity Claim Against Defendant Shrader

Judge Wang concluded that the Third Amended Complaint fails to state an individual capacity claim against Defendant Shrader because it lacks any allegations that Defendant Shrader *personally* participated in allowing Lopez's assault to occur or

13

*personally* deprived Lopez of medical treatment after the assault.  (ECF No. 54 at 18–19.)

Neither party has filed an objection to this portion of the Recommendation.  The Court finds no clear error and therefore adopts this portion of the Recommendation.

2.   Official Capacity Claim Against Defendant Shrader

Claim One of the Third Amended Complaint alleges that Defendant Shrader "failed to properly maintain proper staffing levels, policies, and procedures at the Jefferson County Jail to prevent inmate on inmate violence and maintain minimal safety and security of Mr. Lopez during his incarceration."  (ECF No. 17 at 5.)  As explained in Part IV.A, the Court has already dismissed Claim One against Defendant Shrader to the extent it lies in state tort law.  The remaining allegations in Claim One contend that Defendant Shrader violated Lopez's constitutional rights.

Constitutional claims against defendants in their official capacity are claims against the municipality.  *See Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998) (recognizing that 18 U.S.C. § 1983 suits against municipal officers acting their official capacity "are the same" as suits against the municipality).  The municipality can only be liable where there is a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

 To state a claim for municipal liability for claims of "inadequate hiring, training, or other supervisory practices," a plaintiff must "demonstrate that the municipal action was taken with 'deliberate interference' as to its known or obvious consequences."  *Waller v.*

*City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quoting *Bd. of Cnty.*

*Comm's of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 407 (1997)).  Deliberate

indifference requires "proof that a municipal actor disregarded a known or obvious

consequence of his action."  *Id.*  Moreover, although notice is generally established by

providing the existence of a pattern of tortious conduct, deliberate indifference may also

be found where "a violation of federal rights is a 'highly predictable' or 'plainly obvious'

consequence of a municipality's action or inaction."  *Barney v. Pulsipher*, 143 F.3d

1299, 1307 (10th Cir. 1998) (citing *Brown*, 520 U.S. at 409).

 Affording the Third Amended Complaint a liberal construction, Judge Wang

found that Lopez plausibly alleged an official capacity claim against Defendant Shrader.

(ECF No. 54 at 20.)  In support of this determination, she pointed to the Third Amended

Complaint's allegation that, notwithstanding his training and knowledge of operations at

the Jefferson County Jail, Defendant Shrader

> allowed staffing levels at the jail to fall to, be set, and remain
> at, extremely low and unsafe levels which were insufficient
> to [e]nsure the safety of Mr. Lopez during his incarceration
> and which were insufficient to monitor and maintain
> reasonable control and orderly operations over the actions
> of the jail inmates which were housed with Mr. Lopez in
> BHU.

(*Id.* at 20 (citing ECF No. 17 at 6).)

 Defendants objected to Judge Wang's analysis that Lopez plausibly alleged an

official capacity claim against Defendant Shrader for two reasons: (1) the Third

Amended Complaint does not establish a direct causal link between alleged municipal

policy or custom and the alleged constitutional deprivation; and (2) the Third Amended

Complaint does not plausibly allege that Defendant Shrader did not take the municipal action with deliberate indifference to its known or obvious consequences.  (ECF No. 55 at 8–10.)  The Court disagrees.

The Third Amended Complaint alleges, among other things, that

- [Defendant Shrader] allowed staffing levels at the jail to fall to, be set, and remain at, extremely low and unsafe levels which were insufficient to [e]nsure the safety of Mr. Lopez during his incarceration and which were insufficient to monitor and maintain reasonable control and orderly operations over the actions of the jail inmates which were housed with Mr. Lopez in the BHU.  (ECF No. 17 at 6.)

- [Defendant Shrader] receives or should receive per . . . Jefferson County jail regulations, policy, and custom, daily reports on jail capacity, jail inmate population, inmate-on-inmate assaults, inmate-on-staff assaults, classifications of inmates housed at the jail, jail staff-to-inmate ratios . . . . (*Id.*)

- [Defendant Shrader] would have attended numerous seminars, classes, and educational programs associated with his position and years of experience which would inform of him of the dangerous conditions at Jefferson County Jail caused by chronic under-staffing, inmate-on-inmate and inmate-on-staff assaults, lack of supervision, lack of officer training, lack of reporting procedures which if left uncorrected would result in the Eighth[3] and Fourteenth [Amendment] constitutional violations alleged in this complaint.  (*Id.* at 6–7.)

- [Defendant] Shrader had an affirmative duty, when briefed and made aware of the dangerous conditions and chronic under-staffing at the Jefferson County Jail to implement policy and procedural changes to correct the violations.  (*Id.* at 7.)

---

[3] Because Lopez is a pretrial detainee, the Eighth Amendment does not apply to his claims.  *See Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999) ("Pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment.").

- • [P]er supervisory policies, briefing procedures, and reporting regulations inherent to his position as Jefferson County Sheriff, it would be a virtual impossibility that Sheriff Shrader did not know of the chronically unsafe under-staffing levels and inmate-on-inmate violence occurring at the jail yet knowingly and negligently failed to take [ ] corrective actions. (*Id.* at 7.)

- • [H]ad Sheriff Shrader promulgated procedures and policies to address the readily apparent jail staffing shortages, overcrowding, inmate-on-inmate violence, and dangerous conditions at the Jefferson County Jail when briefed and made aware in the months prior to Mr. Lopez being incarcerated in the jail, the conditions which caused Mr. Lopez to be assaulted would not have existed and the jail policy deficiencies which caused Deputies Hensley, Boll, and Hall to fail to deliver Mr. Lopez to medical to receive treatment for his serious medical need would not have existed and would have been corrected. (*Id.* at 9.)

In light of the liberal construction that the Court affords to *pro se* filings, *see Haines v. Kerner*, 404 U.S. 519, 596 (1972) (holding *pro se* complaints "to less stringent standards than formal pleadings drafted by lawyers"), the Court finds that Lopez has plausibly alleged a direct causal link between Defendant Shrader's policies at Jefferson County Jail and Lopez's injuries.  The Court likewise finds Lopez has adequately pled facts that suggest that his injuries are a highly predictable consequence of Defendant Shrader's policies for Jefferson County Jail and his failure to take actions to curb inmate-on-inmate violence.  Although it is a close call, Lopez's allegations, taken together, also plausibly allege that Defendant Shrader established these policies with deliberate indifference to the likelihood that inmates' constitutional rights would be violated.

For the reasons explained above, the Court overrules this portion of Defendants' objection and adopts the Recommendation to the extent it determines that the Third

Amended Complaint plausibly alleges an official capacity claim against Defendant Shrader.

        3.     <u>Official Capacity Claims against Defendants Boll, Hensley, and Hall</u>

Judge Wang concluded that the Third Amended Complaint fails to state an official capacity claim against Defendants Boll, Hensley, and Hall because it lacks any allegations that these Defendants possess final policymaking authority to establish municipal policy with respect to the acts in question. (*Id.* at 19.) There are no objections to this portion of the Recommendation, and the Court likewise finds that it is without clear error. Accordingly, the Court adopts this portion of the Recommendation.

## V. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     Defendants' Objection to Recommendation of United States Magistrate (ECF No. 55) is OVERRULED;

2.     The Recommendation (ECF No. 54) is ADOPTED in full;

3.     Defendants' Motion to Dismiss (ECF No. 45) is GRANTED IN PART and DENIED IN PART as set forth herein;

4.     Lopez's First, Second, and Fifth Claims against Defendants are DISMISSED WITH PREJUDICE to the extent they state claims under state tort law;

5.     Lopez's individual capacity claims against Defendant Shrader are DISMISSED WITHOUT PREJUDICE;

6.     Lopez's official capacity claims against Defendants Boll, Hensley, and Hall are DISMISSED WITHOUT PREJUDICE; and

7.      Judge Wang is requested to set this matter for a prompt scheduling conference or such other proceeding as she deems appropriate to move this action forward.

Dated this 28th day of August, 2020.

BY THE COURT:

_____
William J. Martínez
United States District Judge