# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01754-WJM-NYW

JORGE A. LOPEZ,

      Plaintiff,

v.

JEFF SHRADER, in his official capacity,
BOLL, in his individual capacity,
HENSLEY, in his individual capacity, and
HALL, in his individual capacity,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court on Defendants Jefferson County Sheriff Jeff Shrader ("Defendant Shrader" or "Sheriff Shrader"), Jefferson County Sheriff's Deputy Boll ("Defendant Boll" or "Deputy Boll"), Jefferson County Sheriff's Deputy Hensley ("Defendant Hensley" or "Deputy Hensley"), and Jefferson County Sheriff's Deputy Hall's ("Defendant Hall" or "Deputy Hall") (collectively, "Defendants") Motion for Summary Judgment [Doc. 116, filed November 9, 2021]. This court considers the Motion for Summary Judgment (or "Motion") pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated November 8, 2019 [Doc. 33], and the Memorandum dated November 9, 2021 [Doc. 117]. The court concludes that oral argument will not materially assist in the resolution of this matter. Accordingly, upon review of the Motion and associated briefing, the entire case file, applicable case law, and being otherwise fully advised, this court respectfully **RECOMMENDS** that the Motion for Summary Judgment be **GRANTED**.

## BACKGROUND

### I.     Factual Background

Plaintiff Jorge A. Lopez ("Plaintiff" or "Mr. Lopez") is an inmate currently incarcerated within the Colorado Department of Corrections ("CDOC") at Freemont Correctional Facility.  *See* [Doc. 48].  The events underlying this case occurred while Mr. Lopez was housed as a pre-trial detainee in the Jefferson County Jail.  *See* [Doc. 1 at 6].  The court draws the following facts from the Third Amended Complaint [Doc. 17].

On May 14, 2019, at some time between approximately 5:00 p.m. and 6:00 p.m., Defendant Boll, the sole officer supervising the "BHU housing unit" of the Jefferson County Jail, was serving inmates their dinner when numerous unsupervised inmates began cutting the line and bullying other inmates.  [*Id.* at 11, 14].  During this time, Mr. Lopez was physically assaulted while standing in line waiting for his dinner.  [*Id.* at 6, 10, 14, 18, 20, 24].  Another inmate repeatedly struck Mr. Lopez in the face with a food tray and his fists, [*id.* at 11, 15], causing Mr. Lopez to suffer severe head trauma resulting in, among other alleged injuries, permanent loss of vision in his right eye, [*id.* at 6, 10, 13, 17, 20, 24].

Immediately following the assault, Mr. Lopez alleges he verbally informed Defendant Boll about the assault and the resulting injury, showed him the injuries to his head and face, and informed him that he had serious medical needs requiring immediate attention from the Jefferson County Jail medical provider.  [*Id.* at 11, 14].  Mr. Lopez alleges that Defendant Boll did not call medical, inform medical care providers of Mr. Lopez's injuries, or notify his superiors that Mr. Lopez requested or needed urgent medical care.  [*Id.*].  After being made aware of the assault, Defendant Boll placed Mr. Lopez outside of BHU pod and reviewed video surveillance of the incident.  [*Id.*].  Defendant Boll then caused Mr. Lopez to be removed from BHU pod and placed

in the medium custody section of the jail without reporting the incident or arranging transportation of Mr. Lopez to medical.  [*Id.* at 11–12, 14–15].

Defendant Hensley was assigned to transport Mr. Lopez to the medium security unit of the Jefferson County Jail following reassignment of Mr. Lopez after the assault in the BHU pod.  [*Id.* at 18].  During the escort, Mr. Lopez alleges he verbally informed Defendant Hensley of the assault and his need for medical attention, described the injuries he sustained, and showed Defendant Hensley the injuries to his head, face, and neck.  [*Id.*].  Mr. Lopez repeatedly requested Defendant Hensley take him to the medical department.  [*Id.*].  Upon arrival in the medium custody unit, while being placed in his cell, Mr. Lopez again informed Defendant Hensley of his medical needs and asked to be escorted to the medical department.  [*Id.*].  Defendant Hensley refused to escort Mr. Lopez and did not make him aware of any other means by which he could report his injuries and request treatment.  [*Id.*].  Defendant Hensley then locked Mr. Lopez in his cell.  [*Id.*].  Inmates in "medium custody" make medical requests via a computer kiosk located in the day room of the pod; because inmates were "locked in their cells for 23 hours a day, and only allowed out for showers and meals," Mr. Lopez was not allowed to access the kiosk for eight days.  [*Id.*].  In the days following the assault, Mr. Lopez filed a complaint informing the Jefferson County District Court in his criminal case, number 18CR1195, of the assault and ensuing injuries and requesting that court take "corrective action" on his behalf.  [*Id.* at 8].

Defendant Hall was the acting floor sergeant assigned to housing unit 5 of the BHU unit on the date of Mr. Lopez's assault.  [*Id.* at 20].  As acting floor sergeant, he was responsible for supervising floor officers in each pod of the living unit, including Defendant Boll and Defendant Hensley.  [*Id.* at 20–21].  Immediately following the assault, Mr. Lopez alleges that Defendant Hall was verbally informed of the incident by Defendant Boll and reviewed security video footage.

3

[*Id*. at 25].  Defendant Hall failed to notify Jefferson County Jail medical personnel or ensure Mr. Lopez received care.  [*Id.*].  According to Mr. Lopez, Defendant Hall had become complacent to the dangerous conditions in Jefferson County Jail due to understaffing and negligently failed to fulfill or disregarded his supervisory duties, duty to investigate Mr. Lopez's assault, and duty to ensure Mr. Lopez received medical care.  [*Id*. at 20–23].  Mr. Lopez also contends that Sheriff Shrader failed to properly maintain proper staffing levels, policies, and procedures at the Jefferson County Jail to prevent inmate-on-inmate violence and maintain minimal safety and security while Mr. Lopez was incarcerated.  [*Id.* at 5].

## II.     Procedural History of the Instant Motion for Summary Judgment

Mr. Lopez initiated this action pro se on June 17, 2019, by filing a Prisoner Complaint pursuant to 28 U.S.C. § 1983 against Defendants Jefferson County Jail, "Deputy Boll," "Deputy Hensley," and "Deputy Hall," for violation of his Eighth Amendment rights.  *See* [Doc. 1].  Per the Orders of the Honorable Gordon P. Gallagher, Mr. Lopez filed an Amended, Second Amended, and Third Amended Complaint.  *See* [Doc. 4; Doc. 7; Doc. 9; Doc. 12; Doc. 13; Doc. 17].  Mr. Lopez filed his Third Amended Complaint, the operative pleading in this case, on September 23, 2019.  [Doc. 17].

Mr. Lopez's Third Amended Complaint alleged six claims against Defendants pursuant to 42 U.S.C. § 1983.  *See* [Doc. 17].  Specifically, Plaintiff alleged:

(1)     "Negligence / Negligence Per Se / Failure to Supervise (Respondeat Superior)" against Defendant Jeff Shrader ("Claim One");

(2)      "Negligence / Negligence Per Se / Failure to Supervise" against Defendant Boll ("Claim Two");

(3)     "Deliberate Indifference to Mr. Lopez' Serious Medical Needs" against Defendant Boll ("Claim Three");

> (4)   "Deliberate Indifference to Mr. Lopez' Serious Medical Needs" against
>        Defendant Hensley ("Claim Four");
>
> (5)   "Negligence / Negligence Per Se" against Defendant Hall ("Claim Five");
>        and
>
> (6)   "Deliberate Indifference to Mr. Lopez' Serious Medical Needs" against
>        Defendant Hall ("Claim Six").

[*Id.* at 5–26]. Each Defendant was named in their official and individual capacities. *See* [*id.* at 2–3]. Upon Order from Magistrate Judge Gallagher on September 25, 2019, [Doc. 18], and the Consent/Non-Consent Form filed November 4, 2019, [Doc. 31], this case was ultimately reassigned to the Honorable William J. Martinez on November 6, 2019. [Doc. 32].

On December 5, 2019, Defendants filed a Motion to Dismiss Third Amended Prisoner Complaint [ECF No. 17] ("Motion to Dismiss"), seeking to dismiss all of Plaintiff's claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See generally* [Doc. 45]. On July 15, 2020, the undersigned issued a Recommendation that the Motion to Dismiss be granted in part and denied in part. *See* [Doc. 54]. On August 28, 2020, Judge Martinez adopted this court's Recommendation, [Doc. 54], to grant in part and deny in part the Motion to Dismiss, leaving the following: (1) Claim I: an official capacity claim against Defendant Shrader for "failing to properly maintain proper staffing levels, policies, and procedures at the Jefferson County Jail to prevent inmate on inmate violence and maintain minimal safety and security of Mr. Lopez during his incarceration," [Doc. 57 at 14, 17–18]; and (2) Claims III, IV, and VI: individual capacity deliberate indifference claims against Defendants Boll, Hensley and Hall, [*id.* at 18]. Thereafter, Defendants filed their Answer to Plaintiff's Third Amended Complaint [Doc. 60], and this case proceeded forward with discovery. *See, e.g.*, [Doc. 58; Doc. 70; Doc. 76; Doc. 88; Doc. 91; Doc. 102].

On November 9, 2021, Defendants filed the instant Motion for Summary Judgment [Doc. 116]. On December 1, 2021, the court ordered Plaintiff to respond to the Motion for Summary Judgment on or before January 3, 2022. [Doc. 118]. Plaintiff filed his Response to the Motion for Summary Judgment on December 20, 2021, [Doc. 128], and Defendants filed their Reply on January 3, 2022, [Doc. 136].[1] Accordingly, the Motion for Summary Judgment is ripe for determination.

## MOTION FOR SUMMARY JUDGMENT

### I.   Legal Standard

Pursuant to Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted). It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial. *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). At all times, the court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016).

To satisfy his burden at summary judgment, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements

---

[1] Plaintiff also filed a document titled "Plaintiff's reply in Support of Response to Defendant's Motion for Summary Judgment," which is signed January 14, 2022. *See* [Doc. 139 at 7].

based on speculation, conjecture, or subjective belief are insufficient. *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998) (explaining that the nonmovant cannot rely on "mere reargument of his case or a denial of an opponent's allegation" to defeat summary judgment).  In considering the nonmovant's evidence, the court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).  Further, the court may consider only admissible evidence, *see Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995), though the evidence need not be in a form that is admissible at trial—only the substance must be admissible at trial, *see Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016).  Indeed, "[t]o determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

In applying these legal principles, this court is mindful that Mr. Lopez proceeds pro se and is entitled to a liberal construction of his papers. *See Smith v. Allbaugh*, 921 F.3d 1261, 1268 (10th Cir. 2019).  But the court cannot and does not act as an advocate for a pro se party. *See United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019).  Nor does a party's pro se status exempt him from complying with the procedural rules that govern all civil actions filed in this District, namely, the Federal Rules of Civil Procedure and the Local Rules of Practice for the District of Colorado. *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018); *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008).

## II.   Undisputed Material Facts

The court draws the following undisputed material facts from the record before it.[2]

1.     On May 14, 2019, for at least part of that day, Mr. Lopez was an inmate in Module 5A, which was the Behavioral Health Unit ("BHU") of the Jefferson County Detention Facility (the "JCDF").  [Doc. 116 at 2; Doc. 17 at 6; Doc. 116-3 at 34:5–16; Doc. 116-4 at ¶¶ 5–6].[3]

2.     During meal service that day, Robert Lopez ("Robert"), another inmate, physically assaulted Plaintiff with his (Robert's) meal tray.  [Doc. 116 at 2; Doc. 17 at 6; Doc. 116-5 at ¶ 3].

3.     Deputy Boll was working in the BHU at the time of this incident.  [Doc. 116 at 2; Doc. 116-3 at 39:7–9; Doc. 116-5 at ¶ 3].

4.     Deputy Boll witnessed Robert throw the contents of his meal tray at Plaintiff and swing his tray at Plaintiff twice, hitting Plaintiff in the arm.  [Doc. 116 at 3; Doc. 116-5 at ¶ 3].

5.     The interaction between Plaintiff and Robert lasted a matter of seconds.  [Doc. 116 at 3; Doc. 116-3 at 39:10–17].

6.     Deputy Boll physically separated Plaintiff and Robert.  [Doc. 116 at 3; Doc. 116-3 at 40:4–6; Doc. 116-5 at ¶ 4].

---

[2] Because Mr. Lopez does not point to evidence to rebut the Statement of Material Facts in Defendant's Motion for Summary Judgment, *see* [Doc. 128], the court deems the properly supported facts offered by Defendants as true. *See* Fed. R. Civ. P. 56(e)(2).  However, even where certain facts have been deemed as true, the court may not enter summary judgment unless the moving parties carry their burden under Rule 56 of the Federal Rules of Civil Procedure. *See Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002).

[3] The court notes that, in their Statement of Material Facts, Defendants state that, "[o]n March 14, 2019, Lopez was an inmate in Module 5A, which was the Behavioral Health Unit ('BHU') of the Jefferson County Detention Facility (the 'JCDF')," [Doc. 116 at 2], while the documents cited by Defendants, provide that Plaintiff was in the BHU on May 14, 2019, *see* [*id.* (citing to [Doc. 17 at 6; Doc. 116-4 at ¶ 6; Doc. 116-3 at 34:5–16])].  Ultimately, the difference in months does not materially affect the court's analysis here given that it appears that Defendants' reference to "March 14, 2019" instead of "May 14, 2019" is a typographical error. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

7.      Deputy Boll did not observe any visible injuries on Plaintiff, and Plaintiff did not notify Deputy Boll that he was injured or ask Deputy Boll for medical attention.  [Doc. 116 at 3; Doc. 116-3 at 41:24–42:18; Doc. 116-5 at ¶ 5].

8.      Two other deputies responded to the module to assist following the incident while Deputy Boll returned to finish distributing meals to the remainder of the module.  [Doc. 116 at 3; Doc. 116-3 at 40:9–19, 43:2–22; Doc. 116-5 at ¶¶ 6–7].

9.      The same day, Deputy Hall responded to a "fight in progress call" in Module 5A. [Doc. 116 at 3; Doc. 116-2 at ¶ 3; Doc. 116-3 at 43:2–8].

10.     Upon arriving in the module, Deputy Hall went to speak with Robert.  [Doc. 116 at 3; Doc. 116-2 at ¶ 4].

11.     Deputy Hall did not have any direct interaction with Plaintiff, did not observe any visible injuries on Plaintiff, and Plaintiff did not notify Deputy Hall that he was injured or ask Deputy Hall for medical attention.  [Doc. 116 at 3; Doc. 116-2 at ¶ 5; Doc. 116-3 at 44:10–45:8].

12.     That day, Deputy Hensley responded to Module 5A and escorted Plaintiff to a module on level 7.  [Doc. 116 at 3; Doc. 116-1 at ¶ 3].

13.     Deputy Hensley left the level 7 module and returned sometime thereafter with a sack lunch for Plaintiff—who had informed Deputy Hensley that he was unable to eat dinner because he was involved in a fight during dinner distribution—and some personal property that Plaintiff had requested from Module 5A.  [Doc. 116 at 3; Doc. 116-1 at ¶¶ 4–5].

14.     At no time did Deputy Hensley observe any visible injuries on Plaintiff, and Plaintiff did not notify Deputy Hensley that he was injured or ask Deputy Hensley for medical attention.  [Doc. 116 at 3; Doc. 116-1 at ¶ 6].

15.     On May 14, 2019, Deputies Hall and Hensley worked solely as deputies and did

not have any supervisory responsibility, training responsibility, or control over any other deputies. [Doc. 116 at 4; Doc. 116-1 at ¶ 8; Doc. 116-2 at ¶ 6].

16.     The JCDF's grievance system is the established system through which inmates can secure administrative remedies for their concerns.  [Doc. 116 at 4; Doc. 116-4 at ¶ 8].  The JCDF Inmate Handbook details the grievance system.   [Doc. 116 at 4; Doc. 116-6 at 2–5].

17.     The JCDF's grievance process requires inmates who wish to file a grievance to do so within five (5) calendar days of the incident being grieved.  [Doc. 116 at 4; Doc. 116-4 at ¶ 8; Doc. 116-6 at 3].

18.     The electronic inmate kite and grievance system ("Inmate Request System") is available to all inmates via kiosks during dayroom time.  [Doc. 116 at 4; Doc. 116-4 at ¶¶ 3–4; Doc. 116-6 at 2].  If an inmate is unable to use a kiosk, he may also ask for a paper request form. [Doc. 116-4 at ¶ 4].

19.     During his incarceration at the JCDF, Mr. Lopez filed twenty-eight (28) kites and no grievances.  [Doc. 116-4 at ¶ 9].

20.     Mr. Lopez submitted three medical kites following the May 14, 2019 incident—on May 21, May 28, and June 7, 2019—and he did not submit any grievances regarding the May 14, 2019 incident. [*Id.* at ¶ 10].

21.     On May 18, 2019, Mr. Lopez submitted a kite to the chaplain at JCDF regarding Plaintiff's "spiritual journey" and requested to "get baptized in the Holy Spirit" in the presence of two witnesses.  [Doc. 116 at 4; Doc. 116-7 at 1 (capitalizations omitted)].   This kite was unrelated to the May 14, 2019 incident.  [*Id.*].

22.     On May 22, 2019, a nurse in the JCDF performed a vision examination on Mr. Lopez and referred him to the doctor at the JCDF, whom Mr. Lopez visited the next day.  [Doc.

116 at 4; Doc. 116-3 at 87:4–88:15].

23.     On or about May 24, 2019, Mr. Lopez visited an outside medical provider at Denver Eye Surgeons, which was scheduled for Mr. Lopez by the JCDF doctor.  [Doc. 116 at 4; Doc. 116-3 at 95:6–96:18].

24.     Mr. Lopez is currently incarcerated in the Colorado Department of Corrections. [Doc. 116-3 at 5:17–24].

25.     The Division Chief with the Detentions Division of the Jefferson County Sheriff's Office ("JCSO"), Rob Reardon ("Mr. Reardon"), is familiar with the staffing levels at the JCDF during Mr. Lopez's incarceration from April 17 to June 27, 2019, as well as the staffing requirements and policies at the JCDF during that time.  [Doc. 116-8 at ¶ 4].

26.     Mr. Reardon reviewed the staffing plan that JCDF created for 2019, which provided the staffing requirements for the JCDF.  [*Id.* at ¶ 9].

27.     The JCDF's minimum staffing requirements mandated that there be one deputy working in Module 5A on May 14, 2019.  [*Id.* at ¶ 10].

28.     As of May 14, 2019, the JCSO maintained a policy that provided "[w]hen an inmate is observed to be injured or reports that he/she has been injured, medical personnel are to be notified immediately."  [Doc. 116 at 5; Doc. 116-9 at 1].

## III.   Analysis

Defendants advance four arguments in support of their Motion for Summary Judgment. *See* [Doc. 116].  First, Defendants argue that Mr. Lopez's failure to administratively exhaust his claims bars this suit in its entirety.  [*Id.* at 7–8].  Second, Defendants argue that Mr. Lopez does not have a private right of action under the Colorado Constitution.  [*Id.* at 8–9].  Third, Defendants argue that the Deputy Defendants are entitled to qualified immunity.  [*Id.* at 9–16].  Fourth,

Defendants argue that Mr. Lopez cannot establish any claims against Defendant Shrader in his official capacity. [*Id.* at 16–20].

I first address the record before the court before considering whether Defendants have met their burden for purposes of summary judgment.

### A.     Record Before the Court

Before turning to the substantive arguments, this court considers the record before it—namely, Plaintiff's filing of the document titled "Plaintiff's Reply in Support of Response to Defendant's Motion for Summary Judgment" ("Surreply"), [Doc. 139], and whether this document should be considered in evaluating the instant Motion.

Neither the Federal Rules of Civil Procedure nor this District's Local Rules of Civil Practice allow for surreplies as a matter of right. In the Tenth Circuit, "[a] district court must permit a surreply where it relies on new materials—i.e., new evidence or new legal argument—raised in a reply brief." *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, No. 06-cv-00037-PAB-CBS2010 WL 420046, at *10 (D. Colo. Feb. 1, 2010) (citing *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006)). "However, where the materials are not new or a court disregards any materials that are, that court need not permit a surreply." *Id.* (citing *Green v. New Mexico*, 420 F.3d 1189, 1196–97 (10th Cir. 2005)).

Here, Mr. Lopez did not seek leave of court to file his Surreply, and the court's review of the Surreply does not indicate that Mr. Lopez relied on new materials raised in Defendants' Reply brief. *See* [Doc. 139]. Nor does Mr. Lopez introduce any evidentiary support for his arguments with the Surreply. Mr. Lopez's arguments and supporting citations in the Surreply underscore the fact that the Surreply addresses points that Defendants initially raised in the Motion for Summary Judgment regarding qualified immunity, that could have been raised within Mr. Lopez's Response

to the Motion filed on December 20, 2021.  *Compare* [Doc. 116 at 9–16; Doc. 128] *with* [Doc. 139

at 1–7].     Notwithstanding the foregoing considerations, the court acknowledges that Plaintiff is

pro se and the Surreply was filed shortly after Defendants filed their Reply.  *See* Fed. R. Civ. P.

56(c)(3) (noting that the court may also consider other materials in the record in making its

summary judgment determinations); *see Echon v. Sackett*, No. 14-cv-03420-PAB-NYW, 2017 WL

4181417, at *2 n.3 (D. Colo. Sept. 20, 2017) ("Neither the Federal Rules of Civil Procedure nor

the Local Rules of Practice of this District contemplate that a party may freely file a surreply.

However, Plaintiffs did not move to strike the surreply and I do not find that it materially affects

the court's analysis of the Motion for Summary Judgment."), *report and recommendation adopted*,

2017 WL 5013116 (D. Colo. Nov. 1, 2017).  Accordingly, the court will consider the Surreply as

necessary in reaching its conclusions herein.

### B.     Exhaustion of Administrative Remedies

Defendants first argue that Mr. Lopez's failure to administratively exhaust his claims bars

this suit in its entirety.  [Doc. 116 at 7–8].  The Prison Litigation Reform Act "(PLRA") states that

"[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or

any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "Any prisoner

who seeks to bring a claim involving 'general circumstances or particular episodes' of prison life

must first exhaust the administrative remedies available to him in prison."  *May v. Segovia*, 929

F.3d 1223, 1226–27 (10th Cir. 2019) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002) and *Jones

v. Bock*, 549 U.S. 199, 211 (2007)).  "Because the prison's procedural requirements define the

steps necessary for exhaustion, an inmate may only exhaust by properly following all of the steps

laid out in the prison system's grievance procedure."  *Little v. Jones*, 607 F.3d 1245, 1249 (10th

Cir. 2010) (internal citations omitted).  "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim [or any other federal claim] under [the] PLRA for failure to exhaust his administrative remedies," and the "doctrine of substantial compliance does not apply." *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (citation and internal quotation marks omitted).

But the PLRA makes explicit that a prisoner must exhaust only <u>available</u> administrative remedies.  42 U.S.C. § 1997e(a).  An available remedy is one "capable of use for the accomplishment of a purpose." *See Booth v. Churner*, 532 U.S. 731, 737 (2001).  For purposes of PLRA exhaustion, an administrative remedy is <u>unavailable</u> "when a prison official inhibits an inmate from utilizing an administrative process through threats or intimidation," *Tuckel v. Grover*, 660 F.3d 1249, 1252–53 (10th Cir. 2011), or "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy," *Little*, 607 F.3d at 1250; *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (outlining three situations in which failure to exhaust is excusable because an administrative remedy is not available to the inmate as required by the PLRA).  Indeed, "courts [] are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).  Once a defendant demonstrates the plaintiff did not exhaust his administrative remedies, the onus is on the plaintiff "to show that remedies were unavailable to him." *May*, 929 F.3d at 1234 (internal quotation marks omitted); *see also Williams v. Borrego*, No. 19-cv-00371-RBJ-MEH, 2020 WL 1502296, at *7 (D. Colo. Mar. 30, 2020) (noting that inmates face a "high bar to show unavailability") (citing *May*, 929 F.3d at 1235 and *Tuckel*, 660 F.3d at 1254).

1.     The JCDF Administrative Grievance Procedure

Defendants submit with their Motion the Declaration of Sergeant Rod Williams ("Sergeant Williams"), the administrative sergeant with the Detentions Division of the JCSO.  *See* [Doc. 116-4].  In his role as administrative sergeant, Sergeant Williams "oversee[s] the electronic inmate kite and grievance system (the 'Inmate Request System') in the [JCDF]."  [*Id.* at ¶ 3].  According to Sergeant Williams, "[t]here are two ways that inmates can use the Inmate Request System to communicate with staff."  [*Id.* at ¶ 7].  The first way is by submitting "kites or inmate requests in order to access various services in the JCDF, such as to request law library time, legal materials, special meal accommodations, information about the JCDF or their case, and appointments with medical, counseling, and chaplaincy staff."  [*Id.*].  The second way is to submit "a grievance in order to notify staff of issues or problems the inmate is having or to challenge action taken by staff in the JCDF."  [*Id.*].  Sergeant Williams states that the foregoing "grievance process is . . . available to all inmates through the Inmate Request System," and that the "[t]he JCDF's Inmate Handbook, which includes the rules governing the grievance process, is also available to inmates electronically through the same kiosks on which they access the Inmate Request System."  [*Id.*].  Sergeant Williams further states that "[t]he JCDF's grievance system is the established system through which inmates can secure administrative remedies for their concerns" and that the Inmate Handbook provides the procedures for filing such grievances.  [*Id.* at ¶ 8].

The Inmate Handbook—excerpts of which Defendants also submit with the Motion—in turn provides that any inmate wishing to file a grievance is required to do so "within five (5) calendar days of the incident being grieved," and "[e]ach grievance must address only one topic or incident." [Doc. 116-6 at 3].   Consistent with Sergeant Williams' Affidavit, the Inmate Handbook also states that "[e]lectronic grievance forms are accessible via the kiosk in each

module."  [*Id.* at 2].  The Inmate Handbook also explains that "most issues can be resolved by submitting a kite (Inmate Request Form) to the appropriate unit," but "[i]f submitting a kite does not resolve your issue, grievances are also available on the module kiosks."  [*Id.* (letter cases amended for clarity)].  Further, the Inmate Request System maintains records of kites and grievances filed by inmates at the JCDF.  *See* [Doc. 116-4 at ¶ 3].  Defendants supplied, through the Affidavit of Sergeant Williams, a summarized account of every grievance Mr. Lopez filed during his incarceration at the JCDF.  *See* [*id.* at ¶¶ 9–10].

2.   Application

In the Motion, Defendants argue that Plaintiff failed to exhaust his administrative remedies because (1) "he did not submit any grievances regarding the May 14, 2019 incident" and (2) despite Plaintiff's submitting three medical kites following the May 14, 2019 incident, none of those medical kites were filed within the five-day deadline for submitting a grievance.  [Doc. 116 at 7]. In his Response, Mr. Lopez does not dispute Defendants' assertion that Plaintiff "did not submit any grievances regarding the May 14, 2019 incident nor were any of the medical kites filed within the five calendar days following the incident—the required time frame for submitting a grievance." [Doc. 116 at 7]; *see also* [Doc. 116-6 at 3; Doc. 116-4 at ¶ 8 ("Any grievance for the May 14, 2019 incident would have to be grieved on or before May 19, 2019, in order to be timely.")].  Indeed, while Mr. Lopez indicates that he "filed a complaint informing Jefferson County district Court of the Assault and insuing injuries and requested the Court take corrective Action on his behalf,"[4] he does not point to any evidence to suggest that complaint was filed with the Jefferson County District Court within five days of the incident; that such complaint was provided to any officials

---

[4] Consistent with the principle of construing Mr. Lopez's filings liberally, this court quotes from Mr. Lopez's filings without the use of [sic] or the correction of spelling or syntax.

at JCDF within five days of the incident; or that he separately filed any grievance with anyone at JCDF. *See generally* [Doc. 128]. The record before the court is consistent with Defendants' representations—that is, there is no evidence that Mr. Lopez submitted a grievance or kite regarding the May 14, 2019 incident within five days of the incident. Accordingly, the court finds that Defendants have carried their burden in establishing that there are no genuine issues of material fact that Mr. Lopez did not exhaust his administrative remedies.

As mentioned, once a defendant demonstrates the plaintiff did not exhaust his administrative remedies, the onus falls on the plaintiff "to show that remedies were unavailable to him." *Segovia*, 929 F.3d at 1234 (internal quotation marks omitted). In his Response, Mr. Lopez contends that administrative remedies at the JCDF were unavailable to him as follows:

> Plaintiff was relocated to higher custody level limiting Plaintiff access to the kiosk, Furthermore Plaintiff requested medical attention via officer Dep. Hensley. Plaintiff filed a complaint informing Jefferson County District Court of the assault and insuing injuries and requested court take corrective action on his behalf. Plaintiff spoke with BHU Therapist Mr. Morgan Auger about assault and injuries and also not having access to kiosk. Therapist Morgan Auger was able to speak to medical and gain Plaintiff access to kiosk to file medical kite.

[Doc. 128 at 1 (letter cases amended for clarity)]. I find that Mr. Lopez has not satisfied his burden to create a genuine dispute of material fact as to whether he exhausted his administrative remedies.

First, Mr. Lopez does not explain why any such relocation prevented him from accessing the Inmate Request System to file a grievance or a medical kite on or before May 19, 2019—five days after the May 14, 2019 incident—particularly when he was able to file a kite in the same timeframe.[5] Second, Mr. Lopez's assertions that he reported his injuries to some of the staff at

---

[5] Notably, while Mr. Lopez argues that he had "limit[ed] . . . access to the kiosk" following the incident, [Doc. 128 at 1], Mr. Lopez nevertheless was able to submit a non-medical kite on May 18, 2019—wholly unrelated to the May 14, 2019 incident—using the same Inmate Request System that inmates use to submit grievances and other kites. *See* [Doc. 116-4 at ¶¶ 3–4; Doc. 116-7]

JCDF and submitted a complaint to the Jefferson County District Court does not comport with the administrative process outlined in the JCDF Inmate Handbook, *see* [Doc. 116-6 at 3–4].[6]  *See Jones*, 549 U.S. at 218 ("[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules,—rules that are defined not by the PLRA, but by the prison grievance process itself." (internal quotation marks and citation omitted)).  In addition, at the summary judgment phase, Mr. Lopez cannot simply rely upon unverified allegations; instead, he "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 257 (1986).

In sum, Mr. Lopez has not met his burden on summary judgment of showing that the JCDF's grievance process was unavailable to him such that he was excused from the requirement to exhaust his administrative remedies before filing the instant action.  Because exhaustion of administrative remedies is a mandatory prerequisite to filing suit, I find that summary judgment in favor of Defendants is warranted, and that Plaintiff's remaining claims are properly dismissed on this basis alone.  *See Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003) (noting that the exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it.").  Accordingly, this court respectfully **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED** on the basis that Mr. Lopez failed to exhaust his administrative remedies.

For the sake of completeness, however, and given the dispositive nature of the instant Motion for Summary Judgment, I will briefly address Defendants' remaining arguments.

---

[6] Moreover, even if Mr. Lopez had reported his injuries to staff as he claims, he fails to state *when* he reported his injuries.

C.      **Plaintiff's Claims under the Colorado Constitution**

Defendants next argue that, to the extent Mr. Lopez attempts to state his constitutional claims under the Colorado Constitution, no private right of action exists under the Colorado Constitution. *See* [Doc. 116 at 8–9]. As this court has previously acknowledged, although the titles of Mr. Lopez's First, Second, and Fifth Claims include "Negligence," "Negligence Per Se," and "Failure to Supervise," the text of those claims allege violation of Mr. Lopez's rights under "U.S. Const. Amend. VIII and Colo. Const. Art 2, § 20 and . . . Procedural and Substantive right to Due Process pursuant to U.S. Const. Amend. XIV and Colo. Const. Art. 2, § 25." *See* [Doc. 17 at 5, 10, 20]; *see also* [Doc. 54 at 10].

Defendants argue that "[b]ecause Mr. Lopez has an adequate remedy available for any alleged constitutional violations under 42 U.S.C. § 1983, for violation of the United States Constitution, there is no private cause of action to enforce his rights under the Colorado Constitution." [Doc. 116 at 9]. In his Response, Mr. Lopez does not address the issue of whether he has a private right of action under the Colorado Constitution. *See* [Doc. 128]; *see also* [Doc. 139]. In Defendants' Reply, they assert that, given Plaintiff's failure to respond, the court "should deem this argument confessed, hold that there is no cause of action for the reasons set forth in the Motion, and enter judgment in favor of Defendants on any such claims." [Doc. 136 at 5].

While this court does not pass on whether "there is no cause of action" generally under the Colorado Constitution, *see* [*id.*], Defendants are entitled to summary judgment on this issue based on Plaintiff's lack of response. *See Alvariza v. Home Depot*, 506 F. Supp. 2d 451, 459 (D. Colo. 2007) ("Because Plaintiff [does] not otherwise argue in support of her *prima facie* showing, I must deem her *prima facie* case confessed."). Even if it were not confessed, this court has previously observed that Colorado does not have a corollary to the federal statute, 42 U.S.C. § 1983, to address

violations of the Colorado Constitution.  *See* [Doc. 54 at 10 n.4].  Further, "where other adequate remedies exist, the Colorado Supreme Court has held that there is no implied remedy for a violation of the Colorado Constitution." *Sandberg v. Englewood, Colo.*, 727 F. App'x 950, 964 (10th Cir. 2018) (quoting *Board of Cty. Comm'rs of Douglas Cty. v. Sundheim*, 926 P.2d 545, 553 (Colo. 1996) (internal quotations omitted).

### D.   Qualified Immunity

Defendants next argue that Defendants Boll, Hensley, and Hall (collectively, "Deputy Defendants") are entitled to qualified immunity.  [Doc. 116 at 9–16].  The doctrine of qualified immunity protects government officials from individual liability in the course of performing their duties so long as their conduct does not violate clearly established constitutional or statutory right*s*. *Washington v. Unified Gov't of Wyandotte Cty.*, 847 F.3d 1192, 1197 (10th Cir. 2017).  To overcome an invocation of qualified immunity at summary judgment, although the court reviews "the evidence in the light most favorable to the nonmoving party, the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden." *Felder ex rel. Smedley v. Malcom*, 755 F.3d 870, 877–78 (10th Cir. 2014) (internal quotations and citation omitted).  That is, the plaintiff must establish (1) that the defendants violated his constitutional rights and (2) that those rights were clearly established. *See Cox v. Glanz*, 800 F.3d 1231, 1246 (10th Cir. 2015).  It is within the sound discretion of a court to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

Here, Mr. Lopez alleges the Deputy Defendants were deliberately indifferent to his medical needs.  *See* [Doc. 17 at 5–26].  "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825,

828 (1994); *see also Helling v. McKinney*, 509 U.S. 24, 33 (1993) ("The [Eighth] Amendment . . . requires that inmates be furnished with the basic human needs, one of which is reasonable safety." (internal quotation marks omitted)).  Rather than reflect "a court's idea of how to best operate a detention facility," analysis of an Eighth Amendment claim must reflect "the evolving standards of decency that mark the progress of a maturing society."  *DeSpain v. Uphoff*, 264 F.3d 965, 973–74 (10th Cir. 2001) (internal citation and quotation omitted).

"Failure to provide adequate medical care is a violation of the Eighth Amendment if it is a result of deliberate indifference to a prisoner's serious medical needs." *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 307 (10th Cir. 1985) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).  To establish a prison official's constitutional liability, a plaintiff must satisfy both the objective and subjective components of the deliberate indifference test.  *See Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000).  The objective component requires the plaintiff to allege objective facts that demonstrate that the deprivation is "sufficiently serious."  *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citing *Farmer*, 511 U.S. at 834).  The subjective component requires the plaintiff to produce evidence of the defendant's culpable state of mind, i.e., to establish that the defendant knew the plaintiff faced a substantial risk of harm, yet disregarded that risk.  *Estelle*, 429 U.S. at 106; *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quotations and citation omitted).  And "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 842) (quotations omitted).  An Eighth Amendment deliberate indifference claim "is therefore actionable only in cases where the need for additional treatment or referral to a medical specialist is obvious." *Self*, 439 F.3d at 1232.

Applying these standards, the court finds that Mr. Lopez has not presented sufficient evidence to establish his deliberate indifference claim. In particular, the court finds the subjective component of the deliberate indifference analysis to be dispositive of this issue. Specifically, Mr. Lopez does not adduce sufficient evidence to establish that there is a genuine issue of material fact that the Deputy Defendants were aware of facts from which the inference could be drawn that Mr. Lopez was at risk of head trauma and vision impairment <u>and</u> in fact drew such an inference. *See Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009)

In his Response, Mr. Lopez argues that "because there was no immediate action taken by the Deputies to establish Plaintiff's serious medical needs or lack thereof, by not having any direct contact with Deputy Boll or Hall who were the Deputies that first responded to the Assault, Defendants deliberate indifference comes from Plaintiff asking for medical attention in transport and Defendants knowingly denied, or ignored request," and "Defendants knowingly are able to request at any time for medical attention." [Doc. 128 at 1–2]. But Mr. Lopez fails to present any evidence that the Deputy Defendants knew Mr. Lopez faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it. *See* [Doc. 136 at 5]; *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006); *Martinez*, 563 F.3d at 1089 (noting that "[t]he Supreme Court cautioned that an inadvertent failure to provide adequate medical care does not rise to a constitutional violation" (quoting *Estelle*, 429 U.S. at 106 (quotations omitted))).

Indeed, the undisputed facts show that Defendant Boll was the only deputy to witness the incident on May 14, 2019, which lasted only a few seconds. *See* [Doc. 116-5 at ¶ 3; Doc. 116-3 at 39:10–17]. In addition, none of the Deputy Defendants observed any visible injuries on Mr. Lopez, and Mr. Lopez did not notify the Deputy Defendants that he was injured or ask them for medical attention. [Doc. 116-1 at ¶ 6; Doc. 116-2 at ¶ 5; Doc. 116-3 at 41:24–42:18, 44:10–45:8;

Doc. 116-5 at ¶ 5].   Moreover, although Mr. Lopez claims he requested medical attention "in transport" and was ignored or denied such attention, Mr. Lopez does not identify *who* he asked for medical attention or *when* he asked for such medical attention.   *See* [Doc. 128].[7]   This court therefore finds that Mr. Lopez has failed to meet his burden to establish that the Deputy Defendants were deliberately indifferent to Plaintiff's medical needs.   This issue alone is fatal to Plaintiff's Eighth Amendment claim as the burden lies with Plaintiff to first demonstrate that Defendants violated a constitutional right before the court can turn to whether that right was clearly established at the time of the challenged conduct.   *See A.M. v. Holmes*, 830 F.3d 1123, 1134 (10th Cir. 2016); *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017) ("But if the right[s] were not clearly established, we may find qualified immunity without deciding the constitutionality of the conduct.").   I find that the Deputy Defendants therefore are entitled to qualified immunity on Plaintiff's Eighth Amendment claims.

### E.      Claims Against Sheriff Shrader in His Official Capacity

Finally, Defendants argue for summary judgment on the basis that Plaintiff cannot establish any claims against Sheriff Shrader in his official capacity.   [Doc. 116 at 16–20].   In the Third Amended Complaint, Mr. Lopez alleges that Defendant Shrader "failed to properly maintain proper staffing levels, policies, and procedures at the Jefferson County Jail to prevent inmate on inmate violence and maintain minimal safety and security" while Mr. Lopez was incarcerated. [Doc. 17 at 5]; *see also* [*id.* at 6].   Put differently, Mr. Lopez appears to allege that Defendant Shrader (1) failed to properly staff and oversee the JCDF, which in turn resulted in deficient inmate

---

[7] Plaintiff's Surreply also does not provide a sufficient argument to support his claims for deliberate indifference.   Mr. Lopez merely states that "concerning the subjective deliberate indifference element of an Eighth Amendment medical claim, the Defendants have an affirmative duty to provide Plaintiff and other with adequate medical care."   [Doc. 139 at 7 (letter cases amended for clarity)].

monitoring; and (2) Defendant Shrader's policies and procedures are deficient regarding handling of inmate-on-inmate assaults.  *See* [*id.*].

The Tenth Circuit has recognized that a claim against a sheriff in his official capacity is the same as bringing a suit against the municipality.  *See, e.g., Myers v. Okla. Cty. Bd. of Cty. Comm'rs,* 151 F.3d 1313, 1316 n.2 (10th Cir. 1998); *Martinez v. Beggs,* 563 F.3d 1082, 1091 (10th Cir. 2009).  A municipality or "sheriff in his official capacity cannot be held liable for constitutional violations when there was no underlying constitutional violation by any of its officers."  *Martinez,* 563 F.3d at 1091 (citing *Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1317–18 (10th Cir. 2002) (internal quotations marks omitted)).  Thus, "even if," as Mr. Lopez argues, the "policies, training, and supervision [of the Deputy Defendants] were unconstitutional, [Sheriff Shrader] cannot be held liable where, as here, the officers did not commit a constitutional violation."  *Trigalet v. City of Tulsa,* 239 F.3d 1150, 1155–56 (10th Cir. 2001); *see also Est. of Ronquillo by and through Est. of Sanchez v. City and Cty. of Denver*, 720 Fed. App'x 434, 441 (10th Cir. 2017) ("To establish municipal liability under § 1983, Plaintiff must prove a constitutional violation by the individual officers. In other words, 'absent a constitutional violation by the individual police officers whose conduct directly caused plaintiffs' injuries, there can be no municipal liability.'" (quoting *Trigalet*, 239 F.3d at 1156)). As explained above, Mr. Lopez has failed to establish that the Deputy Defendants violated his constitutional rights, and therefore Defendant Shrader cannot be held liable as a matter of law.[8]

---

[8] In addition, to plausibly allege that the Deputy Defendants committed a constitutional violation, Mr. Lopez must also demonstrate that a municipal policy or custom was the moving force behind the constitutional deprivation.  *See Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). A municipal policy or custom can take the form of

(1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage

## CONCLUSION

For the reasons stated herein, this court respectfully **RECOMMENDS** that:

(1)       Defendants' Motion for Summary Judgment [Doc. 116] be **GRANTED**;

(2)       Summary judgment be **ENTERED** in favor of Defendant Jeff Shrader, in his official capacity and **AGAINST** Plaintiff Jorge Lopez on Claim I;

(3)       Summary judgment be **ENTERED** in favor of Defendants Boll, Hensley, and Hall in their individual capacities and **AGAINST** Plaintiff Jorge Lopez on Claims II, IV, and VI, respectively; and

(4)       A copy of this Recommendation shall be sent to:

> Jorge A. Lopez
> #173387
> Fremont Correctional Facility (FCF)
> P.O. Box 999
> Canon City, CO 81215-0999.[9]

---

with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotations and citations omitted).  In the Motion for Summary Judgment, Defendants argue that Mr. Lopez (1) cannot show that the JCDF was understaffed at the time of the incident, let alone that more or different staffing could have prevented the harm about which he complains; and (2) likewise cannot show that the Sheriff's policies and practices related to inmate-on-inmate assaults violated the constitution. [Doc. 116 at 17–20].  The court finds an analysis of these arguments unnecessary here given the court's conclusions that (1) Plaintiff's failure to exhaust his administrative remedies bars this suit in its entirety; (2) in the alternative, Plaintiff has failed to establish his Eighth Amendment deliberate indifference claims against the Deputy Defendants, thus entitling the Deputy Defendants to qualified immunity; and (3) Plaintiff's failure to establish a constitutional violation against the Deputy Defendants precludes liability against Defendant Shrader in his official capacity.

[9] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 E. 30th Street*,

DATED:  February 17, 2022                    BY THE COURT:

                                             Nina Y. Wang
                                             United States Magistrate Judge

---

73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).